STATE OF NORTH CAROLINA v. EDWARD HARPER

No. 844SC315

(Filed 5 February 1985)

**1. Parent and Child § 2.2— child abuse—sufficiency of evidence**
       Testimony of defendant's niece and sister that they saw him beating his five-year-old son with a board and testimony by a doctor who treated defendant's son that in his opinion the child was suffering from battered child syndrome with the bruises to his head and eye being caused by blunt trauma was sufficient for the jury to find that defendant intentionally inflicted serious injury to the child and therefore to support a conviction for child abuse. G.S. 14-318.4(a)(3).

**2. Parent and Child § 2.3— child neglect—sufficiency of evidence**
       Evidence was sufficient to convict defendant of contributing to the neglect of minors where it tended to show that defendant had been instructed as to the easily recognizable symptoms of a disease of his child which could be fatal; the child exhibited the symptoms, but defendant did not take any action and refused to give the child's medicine to a social worker in order for her to administer it; defendant's three children lived in a room which had a bad odor and which contained a bucket filled with urine, feces and worms; the children were dirty and were poorly clothed; and though defendant lived in poverty, he received enough assistance to provide for his children. G.S. 14-316.1; G.S. 7A-517(21).

APPEAL by defendant from *Bruce, Judge*. Judgment entered 3 November 1983 in Superior Court, JONES County. Heard in the Court of Appeals on 7 January 1985.

The defendant was tried for felonious child abuse and three separate charges of misdemeanor contributing to the neglect of a minor. The State's evidence showed that on 21 July 1983 representatives of the Jones County Department of Social Services went to a mobile home in Jones County in which the defendant was living with his three minor children who were Edward Earl Harper, Jr., age five, Timothy Harper, age four, and Montoya Harper, age three. The defendant and his three children lived in one bedroom. There were two other bedrooms in the mobile home which were occupied by the defendant's mother, brother, sister and his sister's two children. The representatives of the Department of Social Services were accompanied by a deputy sheriff who had a court order for the Department to take custody of the three children.

The social workers and the deputy sheriff saw the defendant as they were on the way to his home. They told the defendant where they were going and asked him to follow them to his home, which he did not do. They arrived at the mobile home and found the room in which the defendant was living had an extremely bad odor. There was a toilet which was not functioning. There was a bucket in the room which appeared to be full of urine and feces. There were worms in this bucket. There was not a chest of drawers in the room but the room was full of boxes and clothing. A dirty blanket was on the bed. The children did not have shoes on their feet and they were not wearing underwear. The clothes they were wearing were torn and dirty. The defendant was receiving $221.00 per month in public assistance, $150.00 per month in food stamps, and $100.00 worth of Women's, Infants' and Children's nutritional stamps.

The children were taken to the Craven County Department of Social Services. The defendant came to this place and a social worker asked him if he had medicine for Edward Earl Harper, Jr. He told them that he did but refused to give it to them. Edward Earl Harper, Jr., was swollen about the body and face. His right eye was swollen shut and he had a bruise on his head. Frances Loftin, the defendant's sixteen year old niece, testified that she

lived in the mobile home with the defendant and his children. She testified further that before the children were taken by the social workers she saw the defendant strike Edward Earl Harper, Jr., with a board until the board was broken. The defendant hit his son at least ten times. The next day the child was swollen in the face and around his eyes. He also had a knot on his head. Lois Loftin, the defendant's sister, testified that she saw the defendant beat Edward Earl Harper, Jr., with a board. She said the defendant locked his legs around his son's neck and beat him with a board.

Thomas G. Irons, a pediatrician with a specialty in child abuse and neglect, testified that Edward Earl Harper, Jr., has a "medical condition which is known as nephrotic syndrome, which is a disease of the kidneys that causes Shorty periodically to leak protein into his urine in very large amounts." He was receiving a drug for this condition which had to be properly administered. If the drug is not properly administered the child will die. The signs of relapse are obvious. If there was a puffiness of his face or swelling of his abdomen this is a sign of early relapse. When this happens he needs to be started immediately on therapy and Dr. Irons had so instructed the defendant. Dr. Irons saw the defendant's son on 21 July 1983 at which time the puffiness in his face was a sign that he was well into relapse. In Dr. Irons' opinion he had been in relapse for at least a week. In the opinion of Dr. Irons the swollen eye and the swollen place on the child's head were caused by blunt trauma. In his opinion the child was suffering from a battered child syndrome.

The defendant was convicted on all charges. He appealed from the imposition of a prison sentence.

*Attorney General Edmisten by Assistant Attorney General Robert E. Cansler for the State.*

*John H. Harmon for defendant appellant.*

WEBB, Judge.

[1] The defendant first assigns error to the overruling of his motions to dismiss, to set aside the verdict, and for appropriate relief in all cases. All the motions were based on the insufficiency of the evidence to support the convictions. G.S. 14-318.4 provides in part:

(a) Any parent of a child less than 16 years of age, or any other person providing care to or supervision of the child who intentionally inflicts any serious physical injury which results in

. . . .

(3) substantial impairment of physical health

. . . .

is guilty of child abuse and shall be punished as a class I felon.

The defendant argues that there is no credible evidence that he intentionally inflicted any serious physical injury on his oldest son. We believe the testimony of the defendant's niece and his sister that they saw him beating the child with a board, and the testimony of Dr. Irons that in his opinion the child had a battered child syndrome with the bruises to his head and eye being caused by a blunt trauma is sufficient for the jury to find the defendant intentionally inflicted serious injury to the child. The defendant argues that Dr. Irons could not have formed an opinion as to a battered child syndrome on the basis of two bruises about the head. We believe it is within the expertise of Dr. Irons as to whether the bruises on the eye or head would have been inflicted by another person or were of a type which the child would have inflicted on himself in the normal course of events. See *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978).

The defendant, relying on *State v. Byrd*, 309 N.C. 132, 305 S.E. 2d 724 (1983), also argues that there is no evidence that he struck the child in the head. He points out that neither of the witnesses testified that she saw the defendant hit Edward Earl Harper, Jr., in the head. We believe the testimony by two witnesses that they saw the defendant hit the child with a board, coupled with the evidence that the defendant was in charge of the child who had received blows to the head distinguishes this case from *Byrd*.

The defendant does not contend the child did not receive a serious injury.

The Court properly denied the defendant's motions as to the charge of child abuse.

[2]   As to the three charges of contributing to the neglect of a minor, G.S. 14-316.1 provides in part:

> Any person over sixteen years of age who knowingly causes, encourages, or aids any juvenile within the jurisdiction of the court to be in a place or condition, or to commit an act whereby the juvenile could be adjudicated . . . neglected as defined by G.S. 7A-517 shall be guilty of a misdemeanor.

G.S. 7A-517(21) defines a neglected juvenile as:

> A juvenile who does not receive proper care, supervision, or discipline from his parent, . . . or who is not provided necessary medical care . . . or lives in an environment injurious to his welfare.

As to Edward Earl Harper, Jr., Dr. Irons testified that he had instructed the defendant of the easily recognizable symptoms of a disease of the child which could be fatal. These symptoms appeared at least a week before 21 July 1983. The defendant did not take any action on these symptoms and even refused to give the child's medicine to a social worker in order for her to administer it. We believe this is substantial evidence that the defendant did not provide necessary medical care for his son.

As to the other two children the evidence that they lived in a room that had a bad odor, that there was a bucket in the room which was filled with urine, feces, and worms, that the children were dirty and that they were poorly clothed is substantial evidence that they were not receiving proper care and supervision and their environment was injurious to their health. The defendant lived in poverty. He was receiving enough, however, to provide for his children better than he did. He could have kept the room clean and emptied the bucket which was used as a toilet without any cost. The defendant had an affirmative duty to care for his children.

We hold the defendant's motions as to contributing to the neglect of minors were properly denied.

The defendant last argues that the sentences imposed were excessive. The Court found an aggravating factor which the defendant does not challenge and imposed the maximum sentence on the felonious child abuse charge. It then imposed the maximum

sentence on each of the misdemeanor charges with the sentences to run consecutively with the felony sentence. We can find no error in this. The defendant contends that such a sentence is cruel and unusual but advances no reason why this is so. This assignment of error is overruled.

No error.

Judges EAGLES and COZORT concur.